**FRANCE v. FIREMEN'S INS. CO. OF NEWARK, N. J.** *

No. 16257.

Court of Appeal of Louisiana. Orleans.

Nov. 4, 1936.

Lemle, Moreno & Lemle, of New Orleans, for appellant.

A. G. Williams, of New Orleans, for appellee.

WESTERFIELD, Judge.

Miss Marie France brought this suit on a policy of fire insurance against the insurer, Firemen's Insurance Company of Newark, N. J., claiming $4,000, the face value of the policy less a credit of $2,044.-50, the amount paid to a holder of a mortgage on the property of the insured.

The defendant answered, admitting the issuance of the policy, the destruction of the property by fire, and defended on the ground that the plaintiff was not the sole and unconditional owner of the property as warranted by her in the policy, with the result that there was an increase in the moral and physical hazard to the insurer rendering the policy sued on null and void.

There was judgment below in plaintiff's favor, as prayed for, and defendant has appealed. Plaintiff has answered the appeal, invoking the provisions of Act No. 168 of 1908 and praying that the judgment be increased by adding a penalty of 12 per cent. and a reasonable attorney's fee which he fixes at $400, a total penalty of $880.

Pending this appeal, the plaintiff died, and her heirs have been made parties by proper motion.

The record shows that Louis R. Galatas, the husband of plaintiff's sister, bought from the City Investment Company four lots of ground on Music street in the city of New Orleans for a consideration of

*Rehearing denied Dec. 14, 1936.

$900, payable in monthly installments, and spent $2,400 in the erection of a building of which amount he borrowed $950 from his sister-in-law and $1,200 from the Union Homestead. He was unable to keep up his payments to the homestead and was threatened with foreclosure. Apparently, by mutual agreement, the property was transferred to the homestead and by the homestead to plaintiff for $2,200, wholly on credit. Thereafter Miss France obtained from the Excelsior Homestead a loan of $2,700 with the proceeds of which she paid the Union Homestead. Galatas and his wife lived in the premises with plaintiff under an arrangement whereby she paid board and he paid the monthly installments to the homestead in lieu of rent.

The policy sued on was issued by the defendant company to the plaintiff on January 27, 1931, and the property was destroyed by fire on the 20th of March, 1933. Subsequent to the fire, an employee of the fire marshal's office, Mr. Fitzmorris, interrogated plaintiff concerning the origin of the fire and the ownership of the property. According to his testimony, Miss France informed him that the property belonged to Galatas, the title having been placed in her name merely as a convenience. Miss France, however, who lived long enough to testify upon the trial of the case below, denied that she had told Fitzmorris that she did not own the property and stated that what she said to him was that she did not own the furniture. Galatas testified that he had no interest in the property since 1924, when he conveyed it to the Union Homestead.

Galatas, who had insured his furniture with defendant, was paid for its loss, but the claim of Miss France was resisted. During the time that the title stood in Miss France's name certain improvements were made and paid for by her, though all of the arrangements with the contractor were made by Galatas, who appears to have transacted all business matters relative to the property, such as taking out of insurance, payment of taxes, and handling of money. On one occasion when the loan was increased from $2,200 to $2,700, about $400 was received in a check from the Excelsior Homestead. This check was indorsed by Miss France and delivered to Galatas, who cashed it at D. H. Holmes Company, a local department store, paying his personal account of about $40 and using the remainder to make repairs upon the premises.

Upon the facts which we have narrated, defendant insists that Galatas is the real owner of the property.

Counsel for plaintiff directs our attention to Act No. 222 of 1928, which provides that no policy of fire insurance shall be avoided because of the breach of any warranty or condition in the policy unless it "shall be either such a breach as would increase either the moral or physical hazard under the policy." The contention is made that whether Galatas or Miss France actually owned the property at the time the policy of insurance was issued would not affect the moral or physical hazard involved, since the defendant had issued a policy to Galatas and recognized its obligation for a loss incurred under it when his furniture which was in the premises was destroyed by fire. Opposing counsel counters with the argument that the moral hazard is necessarily increased in all cases where the party affecting the insurance is without a pecuniary interest in the property because of the temptation to set it afire, or, at least, the lack of interest in protecting it from such destruction.

We do not find it necessary to construe the provisions of the act of 1928 because, in our opinion, the defendant has failed to prove that Miss France was not the sole and unconditional owner of the property. The legal title was in her. Her title was good as against Galatas, who is not shown to have any interest whatever since his conveyance to the Union Homestead, from which corporation plaintiff acquired the property and it was good against the world. She was the sole owner because there was no other person who could claim any share of the title. Her ownership was absolute and unconditional. Whatever she said to Fitzmorris about her title could not affect her ownership.

We believe that plaintiff acquired the property for a valuable consideration and that there has been no proof of holding it as a convenience to Galatas. But let us suppose the case to be as counsel for defendant contends and not as we find it. Assuming, therefore, that no consideration flowed to Galatas from Miss France and that the property was put in her name for the purpose of avoiding the claims of his (Galatas) creditors, in our opinion Miss France would still be the sole

and unconditional owner of the property so far as this clause in her policy is concerned. The fact that her title would be voidable at the instance of Galatas' creditors is a matter with which the defendant would have no concern.

In Phoenix Insurance Co. v. Mitchell, 67 Ill. 43, it was held that where the title of the insured was fraudulent and had been set aside in equity, the fact that the legal title vested in insured was all that concerned the insurer: "The conveyance was not void, but only voidable, at the election of the vendor, providing the right of disaffirmance was exercised within a reasonable time. Subject only to that right, McDougal was the legal owner of the property as against all the world. If the deed had been void for fraud in the execution, different consequences would follow. But the conveyance not being void, and a legal title vesting in McDougal, the fact that grounds existed in favor of his vendor, for having it set aside in equity, did not make McDougal's title conditional as to the appellant, nor was it a matter with which the appellant had any legal concern. It can not get rid of its contract of insurance by impeaching the mode by which the insured obtained the legal title to his property, or, in other words, by setting up fraud committed upon third parties."

In National Union Fire Insurance Co. of Pittsburg v. Short et al., 32 F.(2d) 631, 633, 64 A.L.R. 573, the Circuit Court of Appeal for the Sixth Circuit held that a wife's title based upon a conveyance to her by her husband in fraud of his creditors did not affect her warranty in an insurance policy as "'the unconditional and sole owner' of the property." There the court said: "We think the fact that the conveyance to Mrs. Short from her husband of his undivided one-half of the property, without pecuniary consideration therefor, and with intent on his part thereby to prevent its application to his personal debts, did not make her ownership other than unconditional and sole. Her title to the undivided one-half of the property previously held by her was entirely unassailable; and her title to the other one-half, conveyed to her by her husband, was good, not only as against him, but against all the world. There was no other or outstanding title except as possessed by her. There was no other owner in whole or in part. The most that can be said is that she held title to the undivided one-half interest in question, subject to the right of her husband's creditors to have the property applied to the payment of such judgments as they might obtain against him, just as she held her original undivided one-half subject to such judgments as her own creditors might obtain against her." See, also, note 64 A.L.R. 757.

In 14 R.C.L., page 1053, we find the following supported by marginal citations of a number of cases: "Although the insured premises have been conveyed to the insured without consideration, and for the fraudulent purpose of placing them beyond the reach of the grantor's creditors, and the creditors of the grantor have been adjudged to have the right to avoid to the extent of selling the property so far as may be necessary to discharge their obligations, the grantee's title has been considered sole and unconditional."

The authorities cited by counsel for defendant—Adema v. Lafayette Fire Insurance Co., 36 La.Ann. 660 and Perrin v. Stuyvesant Insurance Co., 140 La. 812, 74 So. 110—are not in point. In the first of these cases the insured had the legal title to only one-eighth of the property insured. In the second case legal title was in the state of Louisiana which had acquired the property by adjudication for unpaid taxes, consequently, the insured had no title at all to the property, whatever may have been his right to redeem it.

Our conclusion is that the plaintiff should recover.

Plaintiff's claim, in his answer to the appeal, for penalties and attorney's fees is based upon section 3 of Act No. 168 of 1908. In his petition neither penalties nor attorney's fees are claimed, nor is there any allegation concerning the liability of defendant in this regard. It is said, however, that the prayer for general relief is sufficient to entitle the plaintiff to recover, citing Hennen's Digest, p. 734; Espinola v. Blasco, 15 La.Ann. 426; State ex rel. Levet v. Lapeyrollerie, 38 La.Ann. 912 and Kinder v. Scharff, 125 La. 594, 51 So. 654. These authorities hold that to avoid circuity of action a court may render such judgment as would be given in a new suit under a prayer for general relief and that a mistake in the special prayer may be remedied and that a failure to pray for such relief as the allegations of the petition would warrant may be supplied, but they do not go as far as would be

necessary to sustain plaintiff's contention. Section 3 of the act relied upon provides that the failure to pay a loss within 60 days of the receipt of proof of loss by the insurance company will subject it to 12 per cent. damages on the total amount of the loss together with reasonable attorney's fees. Section 4 of the act provides that the act shall become a part of the policy contract "as if it were incorporated therein, and any condition in the policy contract in contravention with the provisions of this Act will be void and of no effect." The act is mandatory (Bell v. Security Insurance Company, 175 La. 599, 143 So. 705, and authorities therein cited), but the plaintiff has failed to allege liability or to pray for it and we believe he has waived the benefits of the insurance policy which he has failed to demand having brought suit for less than was due him. Code Prac. art. 156; Payne v. Anderson, 35 La.Ann. 977, 979, and Schwing Lumber & Shingle Co. v. Peterman, 140 La. 71, 86, 72 So. 812. However, if the penalty and attorney's fee had been properly claimed, the Supreme Court and not this court would have had appellate jurisdiction. Craten v. Aetna Life Ins. Co. of Hartford (La.App.) 167 So. 856.

For the reasons assigned the judgment appealed from is amended in so far as to run in favor of Louis Galatas, Jr., and George Galatas, legal heirs of Miss Marie France. In all other respects the judgment appealed from is affirmed.

Amended and affirmed.

JANVIER, J., concurs.